# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SHEFTALL GIDDENS,

    Defendant.

CIVIL ACTION NO.: 4:19-cr-111

## **O R D E R**

After a careful *de novo* review of the entire record, the Court concurs with the Magistrate Judge's October 29, 2019 Report and Recommendation (R&R), (doc. 41), to which the defendant has filed objections (docs. 42 & 43). The Report and Recommendation concluded that there was arguable probable cause for the issuance of the challenged search warrant, and, therefore, Giddens' suppression motion should be denied. (Doc. 41 at 6). Giddens objects that the Magistrate Judge failed to adequately consider the implications of his contention that the images referenced in the warrant application were not child pornography. (Doc. 42 at 2-3). He has also filed a timely "amendment" to those objections, which supplements those arguments and argues, for the first time,[1] that the information in the warrant application was stale. (Doc. 43). Those objections, however, fail to respond to the substance of the Magistrate's analysis.

---

[1] Giddens' motion, at most, vaguely suggests that the information in the application was stale. (*See* doc. 26 at 2 (noting that the images were submitted to the National Center for Missing and Exploited Children "more than eight months after the images were allegedly sent")). It was not addressed in the Magistrate Judge's Report and Recommendation. *See generally* doc. 41. Since that argument was not presented to the Magistrate Judge, this Court has discretion to find that it was waived. *See, e.g., Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (holding "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."); *Rolland v. Saul*, 2019 WL 3554640, at * 2 (S.D. Ga. Aug. 5, 2019) (Hall, C.J.) ("[C]ourts have the discretion to consider novel evidence, factual claims, and legal arguments raised for the first time in an objection to an R&R, [but] they

First, Giddens' objections reiterate his dispute that the affidavit's allegations establish probable cause. As the Report and Recommendation explained, however, the task of a reviewing court is *not* to make a *de novo* probable cause determination, but only to determine whether the issuing magistrate had a "substantial basis" for the probable-cause finding. (Doc. 41 at 2-3 (internal citations omitted)); *see also Cauchon v. United States*, 824 F.2d 908, 911 (11th Cir. 1987) ("'[T]he duty of a reviewing court is simply to ensure that the magistrate [who issued a search warrant] had a substantial basis for concluding that probable cause existed.'" (alterations omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39)). The Supreme Court has recognized that "[r]easonable minds frequently may differ" on whether an affidavit *establishes* probable cause, in order to accommodate the preference for warrants and to avoid perennial reevaluations of those determinations, the original determination is entitled to "great deference." *United States v. Leon*, 468 U.S. 897, 914 (1984) (internal quotation marks omitted). To the extent that it challenges the sufficiency of the original probable cause determination, therefore, Giddens' objection applies the wrong standard.

As the Report and Recommendation explains, there is a substantial basis for a probable-cause finding, whether or not the images at issue were pornographic. Giddens first objection is based on the fact that the images at issue, which were described in the affidavit as "appear[ing] to be child pornography." *See* doc. 43 at 1. That objection, though, does not reach the crux of the Report and Recommendation's analysis. The Report and Recommendation rests on the totality of the factual circumstances attested to: including *both* the fact that the images "appeared to be child pornography," *and* that those images were identified as members of series of images depicting "known child victim[s]" maintained by the National Center for Missing and Exploited

---

are under no obligation to do so."). The Court has exercised its discretion, considered, and rejected Gidden's novel staleness argument.

2

Children, which the affidavit further explains, "is a private organization which serves as a national clearinghouse and resource center for families, victims, private organizations, law enforcement, and the public on missing and *sexually exploited* child issues." (*See* doc. 39-1 at 18-19, ¶¶ 37-38, ¶ 37 n.2) (emphasis added). The "series" in question are further described in the affidavit, and— though defendant is technically correct that they do not explicitly identify the crimes the depicted children were victims of, (doc. 42 at 3)— the descriptions strongly imply that the series include sexually exploitative images. (*See* doc. 39-1 at 19-20, ¶ 38). Given the context in which they were "exchanged," even if the images were non-pornographic, they provided a substantial basis for a probable-cause determination. (*See* doc. 41 at 4-6 (citing, *inter alia*., *United States v. Cannon*, 703 F.3d 407, 414 (8th Cir. 2013) ("To obtain a warrant, the detectives were *not required* to show that they had *actually found* child pornography." (emphasis added)).

Giddens takes issue with the R&R's construction of the affidavit as alleging "an 'exchange . . . of images of known child victims through a website known to be favored by traffickers in child pornography," as "not supported by the facts stated in the affidavit in that there was no allegation of any "exchange of images." (Doc. 42 at 3). However, that contention is belied by both the Report and Recommendation and the affidavit. The Report and Recommendation, immediately before the passage Giddens quotes, clearly explained that the "exchange" at issue was not direct. (Doc. 41 at 5 ("an agent interacted with [an] unidentified user, who provided a link to an on-line data storage site (*i.e.* Dropbox), containing 'images that appeared to be child pornography . . .'" (citing and quoting ¶¶ 22-23 of the affidavit)). If the R&R's summary left any doubt, the cited portions of the affidavit confirm that the unidentified user "exchanged" the Dropbox link for one proffered by the agent which "contained files that displayed common child pornography names and titles . . . [but] do not actually display any child pornography." (Doc. 39-1 at 14-15).

Directing the agent to a third-party was no less an "exchange" because of that third party's involvement.[2]

Moreover, the Eleventh Circuit has considered, and rejected, a virtually identical argument based on the exchange of a Dropbox link. *See United States v. Rivenbark*, 748 F. App'x 948, 953-54 (11th Cir. 2018). Rivenbark argued that, since he only sent a hyperlink to a Dropbox, he did not violate the statutory prohibition on "transporting" child pornography. *Id.* at 953. Despite recognizing that the issue was not directly presented by his appeal, the court nevertheless explained "crediting [defendant's] technical argument about the hyperlink versus actual pornography would permit individuals sharing child porn to avoid prosecution simply by using third-party virtual storage to remain one step removed from the illicit materials. It is the difference between providing a location for pickup and handing over the materials directly." *Id.* at 954. The court found that the defendant had "provided access to and facilitated the transportation of child pornography," by sharing the hyperlink to the Dropbox account in question. *Id.* Given that the sharing of such a link was sufficient to support Rivenbark's conviction, such conduct is certainly indicia of criminal activity. Whether or not another judge at another time might not have found the affidavit sufficient to establish probable cause, there is clearly a "substantial basis" that it does.

The significance of the Dropbox link also rebuts defendant's objection that "[t]he only connection of those [apparently pornographic] images to the home is the fact that the home's internet service was used by an unidentified person to chat with the agent and send him the third

---

[2] Giddens' suggestion that the images were not contained in the Dropbox linked during the "chat" borders on the ridiculous. (*See* doc. 42 at 3-4 ("It should be noted that the affidavit does not state that the images were contained in the dropbx account—only that they appeared on the agent's screen as he pasted the address at a time when his computer was experiencing 'technical issues.'")). The Fourth Amendment is not a domain of Jesuitical casuistry; the "common sense" implication that the images "appeared on the agent's screen" as a consequence of his pasting a particular internet address into another internet browser is obvious—the Court would have thought—beyond any *reasonable* dispute.

[-] party Dropbox address." (Doc. 43 at 2). As discussed above, the fact that the Dropbox was not explicitly registered to Giddens is of only minimal significance. The more significant fact is that someone—who defendant admits was using internet service from his home address—provided a direct link to a location containing "apparent" child pornography. To be sure, the fact that the trail of evidence only led to defendant's front door, and not directly to his feet, is one that may be relevant at trial. It is not relevant to whether there was a substantial basis for finding probable cause to search the address in question. Defendant is correct that "[t]he affidavit contained no facts to show that the unidentified person was a resident of the home address to which the internet service was provided, or that the transmittal of the Dropbox address was done from a device located inside the home." (Doc. 43 at 2). That's precisely why a search warrant was necessary; to investigate a possible connection between the address and the contraband. What the affidavit did contain, however, were facts that connected the transmission of apparently illicit material, which was subsequently tied to more definitively illicit material, *to the address whose search was authorized*.[3]

Defendant's amended objection adds an argument that the information contained in the warrant affidavit was stale, given that the chat occurred in August, 2018 and the warrant was not applied for until May, 2019. (Doc. 43 at 3). His reliance on the Third Circuit's analysis in *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002), is misplaced. The *Zimmerman* court did determine that a warrant to search for child pornography lacked probable cause, but because the affidavit only alleged that the target of the warrant possessed and displayed *adult* pornography.

---

[3] Defendant's argument that the omission from the affidavit of the fact that the Dropbox account was not registered in defendant's name is similarly unavailing. (*See* doc. 43 at 4). It might have been *more* indicative if Giddens were the subscriber to the account, but the fact that someone accessing the internet from his home address was able to link to the specific account suggests that the sender was, at least, aware of the contents. Again, whether the Government can prove that Giddens was that sender is a question for trial.

5

*Id.* at 430 (describing the pornography defendant allegedly possessed). *Zimmerman*'s staleness analysis also expressly notes that "there is nothing [in the affidavit] which indicates that even one piece of pornography was ever downloaded from the computer on which the boys allegedly viewed it." *Id.* at 434. Here, on the contrary, there is evidence that suspicious material was downloaded *and stored* in the linked Dropbox account. As the *Zimmerman* court explained, child pornography, unlike adult pornography, is often "protect[ed] and retain[ed] . . . for long periods of time because it is illegal and difficult to obtain." *Id.* Allegations of possession of even particularly graphic adult pornography, as those at issue in *Zimmerman*, will go stale much faster. *See id.* ("*Many* courts have similarly accorded weight to [the] fact," "that pedophiles rarely, if ever, dispose of child pornography." (emphasis added)). The approximately nine-month period at issue here, given the nature of child pornography, is simply not sufficient to make the information stale. *See, e.g., United States v. Frechette*, 583 F.3d 374, 377-79 (6th Cir. 2009) (finding that approximately sixteen-month delay did not render information related to possession of child pornography stale); *United States v. Schwinn*, 376 F. App'x 974, 979 (11th Cir. 2010) (ten-month-old information about child pornography was not stale).

For all of these reasons, the Court overrules Defendant's Objections, **ADOPTS** the Report and Recommendation as the opinion of the Court, and **DENIES** defendant's motion to suppress (doc. 26).

**SO ORDERED**, this 18th day of December, 2019.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA